**The below described is SIGNED.**



**Dated: February 23, 2007**

*William J. Thurman*

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH

In re:

**Bonnie Birch,**

Debtor.

Bankruptcy Number 06-23273

Chapter 13

**MEMORANDUM DECISION OVERRULING MAX WILLIAMS' OBJECTION TO CONFIRMATION**

The matter before the Court is the hearing on the Debtor's proposed chapter 13 plan, which proposes to sell real property located in Juab County, Utah. Max Williams objected to confirmation, arguing that the Debtor does not own the property and occupies the property as a tenant at will. The Court disagrees.

**I. JURISDICTION AND VENUE**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(L). Venue is appropriate under 28 U.S.C. § 1408(1).

**II. BACKGROUND**

On June 25, 2002, the Debtor entered into a contract with Max Williams to purchase property in Juab County, Utah ("the property") for $60,000, to be paid in four installments of

1

$15,000. The contract obligated Mr. Williams to deliver a warranty deed to the Debtor upon payment of the full purchase price. It states: "This contract does not purport to nor does it convey title to the subject real property."

The contract also contained a forfeiture provision which provided that if the Debtor fails to pay the second installment Mr. Williams "may terminate this contract and retake possession of the real property," in which case the Debtor would be considered a tenant at will with monies paid treated as rental payments. If the Debtor failed to pay the third or fourth installment under the contract, Mr. Williams had the option of declaring a forfeiture or transferring "title" to the Debtor and foreclosing on the property. To invoke the forfeiture provision the contract required Mr. Williams to send the Debtor a certified letter indicating the default and providing the Debtor three business days to cure.

The contract further stated:

14. <u>Rights and Obligations of Ownership:</u> During the pendency of this contract, Birch shall be treated as the owner of the real property, and shall be responsible to pay the property taxes and all other assessments and charges against the real property. In addition, Birch is responsible and liable for any claims which may arise against the subject real property in the event that a tort is committed on the subject real property.

15. <u>Agreement to Defend and Protect:</u> Birch agrees to defend, protect and hold harmless Williams from any claims, liabilities, assessments or other potential encumbrances which may arise against the subject real property from the date of this contract until the property is paid for and title is conveyed by Williams to Birch.

The Debtor took possession of the property and timely paid the first installment owing under the contract. She failed to timely pay the second installment, but paid approximately $13,000 sometime after April, 2003. On March 10, 2006, Mr. Williams' counsel sent the Debtor a letter via certified mail declaring default and giving the Debtor 10 days to cure. The Debtor failed to cure the default but Mr. Williams took no further action to enforce his rights under the

2

contract. On August 24, 2006, counsel for Mr. Williams sent the Debtor another letter via certified mail which also declared a default of the contract and gave the Debtor another 10 days to cure.

The Debtor failed to cure the default and filed for chapter 13 bankruptcy relief on September 1, 2006. She filed Bankruptcy Schedules listing an interest in the property subject to a security interest held by Mr. Williams. On November 30, 2006, the Debtor filed an amended chapter 13 plan which proposes to sell the property and pay creditors from the proceeds. Mr. Williams objected to confirmation arguing that under the forfeiture provisions of the contract he is the sole owner of the property. He asserts that the Debtor continues to occupy the property as a tenant at will, and that the payments made by the Debtor under the contract have been converted to rental payments. The Debtor argues that Mr. Williams never exercised his rights under the contract to forfeit her interest in the property pre-petition.

At the hearing on confirmation, the Court considered oral arguments presented by the parties and took the matter under advisement. On February 20, 2007, the parties filed a Statement of Stipulated Facts. Through this statement the parties stipulate that "it has always been and remains Williams' understanding and intent that he would retain all ownership rights to the Property until he received the full purchase price under the Contract." The statement also recites Williams' intent that upon the Debtor's default under the contract, "any rights the Debtor had to purchase the Property would automatically terminate without any further action by Williams."

3

**III. ANALYSIS**

Under 11 U.S.C. § 1325(a)(6),[1] the Court should confirm a chapter 13 plan if the debtor will be able to comply with the proposed plan. Thus, the Court should not confirm a plan which proposes to sell an interest in property not held by the estate. Under § 541, the estate is comprised of property held by a debtor at the time of filing. In this case, the Debtor proposes to fund her plan in part by selling her interest in the property. To determine whether the plan satisfies § 1325(a)(6), the Court must determine whether the Debtor held an interest in the Property at the time of filing.

**A.    The Debtor Obtained Equitable Title to the Property under the Contract**

Under Utah law, real estate purchase contracts are presumptively governed by the doctrine of equitable conversion.[2] This doctrine provides that "[u]nder an installment land sale contract, the vendor retains legal title as security for the purchase price of the property."[3] Equitable conversion treats the buyer as the owner of the land, enabling the buyer to mortgage equity in the property or sell the buyer's interest through an assignment.[4] Equitable conversion is only a presumption governing installment real estate purchase contracts, and parties are free to agree to a different arrangement.[5] Thus, equitable conversion does not apply to a real estate

---

[1] All statutory references hereinafter are to the Bankruptcy Code unless stated otherwise.

[2] Butler v. Wilkinson, 740 P.2d 1244 (Utah 1987).

[3] Wilkinson, 740 P.2d at 1254.

[4] Id.; Cannefax v. Clement, 786 P.2d 1377, 1380 (Utah App. 1990).

[5] Clement, 786 P.2d at 1389 (Jackson, J. concurring); See also Butler v. Wilkinson, 740 P.2d 1244 (Utah 1987) (citing to Idaho case law); Holscher v. James, 860 P.2d 646, 650 (Idaho 1993) ("The doctrine of equitable conversion applies only if nothing in the contract states otherwise.").

purchase contract where parties agree that the risk of loss remains with the seller or where a contract makes conversion dependant on some future event which might not occur.[6] Where equitable conversion does apply, however, a judgment awarded against the buyer attaches to the property, whereas a judgment against the seller does not.[7]

In this case the contract does not manifest a clear intention of the parties to alter the doctrine of equitable conversion. The contract provides that the Debtor "shall be treated as the owner of the real property, and shall be responsible to pay the property taxes and all other assessments and charges against the real property." It makes the Debtor liable for any claims which arise against the property and obligates the Debtor to defend and hold Mr. Williams harmless from any potential encumbrances. It does not discuss the risk of loss to the property, nor does it make completion of the contract contingent upon an event other than payment of the purchase price.

From the terms of the contract the Court concludes that the doctrine of equitable conversion applied to the sale of the Juab County property. The purchase contract contains no real indication that the parties intended to alter the presumption of equitable conversion and its terms are entirely consistent with application of the doctrine. The Debtor is treated as the owner of the real property and assumes all associated responsibilities and liabilities. This type of treatment indicates that the Debtor obtained some sort of interest in the property, which would be the effect of equitable conversion.

Mr. Williams points out that the contract states: "No Conveyance of Title: This contract

---

[6] James, 860 P.2d at 649; Equitable Conversion, Am.Jur.2d § 17.

[7] Clement, 786 P.2d at 1382-83.

does not purport to nor does it convey title to the subject real property." He argues that this language exhibits an intent that no equitable title passed under the contract. This argument fails, however, in light of the context of this provision. The very next paragraph provides:

> Conveyance of Title Upon Payment of Purchase Price: At the time that full purchase price, including interest, is paid by Birch to Williams, Williams shall then deliver to Birch a warranty deed conveying to Birch all of his right, title and interest to the subject real property, without restriction or reservation.

In this context, it seems clear that the contract's use of the word "title" refers to legal title rather than equitable title. As the Utah Supreme Court stated, "[i]n a uniform real estate contract. . . the vendor usually retains legal title and passes equitable title to the purchaser. . . In that circumstance, ' title' would refer at most to the legal title retained by the vendor."[8]

In addition to the terms of contract, the parties have also stipulated that Mr. Williams' intent in entering the contract was that equitable conversion would not apply. The Court is not persuaded that this self-serving statement is sufficient to rebut the presumption that equitable conversion applied under the contract. The terms of the contract are inconsistent with this stipulation of fact and the stipulation relates only to the intention of one party in entering the contract. The record contains no evidence as to the Debtor's intent in entering the contract.

Accordingly, the Court concludes that under the contract the Debtor obtained equitable title to the Juab County property and Mr. Williams retained legal title as security for the purchase price.

---

[8] Hall v. Fitzgerald, 671 P.3d 224, 227 (Utah 1983).

### B. The Debtor's Interest in the Property was not Forfeited before Filing for Bankruptcy Relief

Even though the Debtor obtained equitable title to the property under the contract, it is possible that the Debtor's interest was forfeited under the contract pre-petition. The contract contains a provision which allows Mr. Williams to forfeit the Debtor's interest in the property where the Debtor defaults in payments and fails to timely cure the default.

Utah recognizes forfeiture provisions in real estate purchase contracts so long as they are clear and unequivocal.[9] The notice of default given under a forfeiture provision must state specifically what the buyer must do to cure the delinquency and avoid forfeiture.[10] Further, where a forfeiture provision is not self-executing such that the seller has the option to forfeit the buyer's rights upon default, the seller must give the buyer notice of his election.[11] A seller's failure to give notice of his election means that the buyer still has rights in the property.[12]

The forfeiture provision under the contract is not self-executing, providing that upon the Debtor's default Mr. Williams "may terminate this contract and retake possession of the real property." Because the forfeiture provision gave Mr. Williams the option of electing forfeiture, he was required under the contract and under Utah law to give proper notice of the deficiency and of his declaration of forfeiture. He gave notice to the Debtor of the deficiency owing under the contract but failed to declare a forfeiture pre-petition. Thus, at the time of filing this case, the

---

[9]First Security Bank of Utah, N.A. v. Maxwell, 659 P.2d 1078, 1081 (Utah, 1983); See also Perkins v. Spencer, 243 P.2d 446, 475-76 (Utah 1952).

[10]Id. at 1081; Pacific Dev. Co. V. Stewart, 195 P.2d 748 (Utah 1948).

[11]Fuhriman v. Bissegger, 375 P.2d 27 (Utah 1962).

[12]Id. at 28.

Debtor still held an equitable interest in the property.

The Court determines that the estate holds an equitable interest in the Juab County property. Thus, Mr. Williams' objection to confirmation under § 1325(a)(6) should be overruled.[13]

## IV. CONCLUSION

Mr. Williams' objection to confirmation should be DENIED. A separate order accompanies this Memorandum Decision.

---

[13] The Court is aware of a line of cases beginning with Perkins v. Spencer, 243 P.2d 446 (Utah 1952) which hold forfeiture provisions unenforceable if their application would allow an "unconscionable or exorbitant recovery." See also Woodhaven Apartments v. Washington, 942 P.2d 918 (Utah 1997). If Mr. Williams had declared a forfeiture in this case, the Court might be persuaded that the reasoning of Perkins applies. In light of the Courts reasoning, however, the Court need not address this issue in detail.

Service of the foregoing **MEMORANDUM DECISION OVERRULING MAX WILLIAMS' OBJECTION TO CONFIRMATION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Justin O. Burton
Russell Evans
Rulon T. Burton & Associates
6000 South Fashion Blvd.
Murray, UT 84107

Bonnie Birch
680 East Capital Blvd.
Salt Lake City, UT 84103

J. Vincent Cameron
47 West 200 South, Suite 600
Salt Lake City, UT 84101

Joseph Covey
John Snow
Parr Waddoups Brown Gee & Loveless
185 South State Street, Suite 1300
Salt Lake City, UT 84111